## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**SOUTHERN SNOW MFG. CO., INC.**
**& SIMEON, INC.**

**CIVIL ACTION**

**CASE No. 10-0791**

**v.**

**SEC.**

**SNOWIZARD, INC.**

**MAG.**

### COMPLAINT

Southern Snow Mfg. Co., Inc., and Simeon, Inc., respectfully represent:

### Related Cases

1.      This case is related or possibly related to Cases Nos. 06-9170 and 09-3394 in this same court, as explained in the required separate paper.

### Jurisdiction and Venue

2.      This U.S. District Court has jurisdiction under 28 USC §1331 and 15 USC §1121 because Plaintiffs complain pursuant to the Lanham Act, codified at 15 USC §1051, *et seq.*, the federal law regulating trademarks and unfair competition and trade practices.  This Court has supplemental jurisdiction under 28 USC §1367 over Plaintiffs' state-law claims under Louisiana state trade mark law at La. R.S. 51:211, *et seq.*, under the Louisiana Unfair Trade Practices Act (LUTPA), La. R.S. 51:1405, *et seq.*, and under Louisiana Civil Code Article 2315, which arise from the same transactions or occurrences and implicate the same questions of fact and related questions of law.

3.      Venue is proper in the Eastern District of Louisiana under 28 USC §1391 where the defendant is subject to personal jurisdiction, the defendant is doing business in the State of Louisiana, and the acts complained of occurred in such district.

1

**Plaintiffs**

4.     Southern Snow Mfg. Co., Inc., is a Louisiana corporation having its place of business at 103 West W St., Belle Chasse, LA 70037, Plaquemines Parish, Louisiana, and is Plaintiff herein.

5.     Simeon, Inc., is a Louisiana corporation having its place of business at 103 West W St., Belle Chasse, LA 70037, Plaquemines Parish, Louisiana, and is Plaintiff herein.

**Defendant**

6.     SnoWizard, Inc., is a Louisiana corporation having its place of business at 101 River Road, Jefferson, LA 70121, Jefferson Parish, Louisiana, and is made the Defendant herein.

**Overview of Complaint**

7.     Plaintiffs sue under federal law of trademarks and unfair competition and trade practices, the Lanham Act, codified at 15 USC §1051, *et seq.*, under Louisiana state trade mark law at La. R.S. 51:211, *et seq.*, under the Louisiana Unfair Trade Practices Act (LUTPA), La. R.S. 51:1405, *et seq.*, and under Louisiana Civil Code Article 2315.  Defendant business-competitor SnoWizard infringed Plaintiffs' federally-registered trademarks SOUTHERN SNOW and FLAVOR SNOW, in violation of Lanham Act Section 32 (15 USC §1114).  Defendant also unlawfully asserted trademarks in CAJUN RED HOT, CHAI LATTEA, COOKIE DOUGH, MOUNTAIN MAPLE, SNOFREE, SNOSOUR, SNOBALLS (design), SWISS ALMOND COCO, TIRAMISU, and ZEPHYR.  Defendant's purported trademarks are variously federally-registered, invoking Lanham Act Sections 37 & 38 (15 USC §1119 & §1120), or state-registered or common-law trademarks, invoking Lanham Act Sections 35 & 43 (15 USC §1117 & §1125).  Plaintiffs claim damages, enhanced damages, costs, attorney fees, and equitable relief for Defendant's trademark infringement and various unlawful assertions and registrations of trademarks.

**Facts establishing Plaintiffs' standing to bring this Complaint**

Plaintiff Simeon, Inc., owns federally-registered trademarks in SOUTHERN SNOW and FLAVOR SNOW, and licenses such registered trademarks and associated goodwill to Plaintiff Southern Snow Mfg. Co., Inc.  Defendant SnoWizard, Inc., and Plaintiff Southern Snow Mfg. Co., Inc, are competitors in the business of selling ice shaving machines, flavoring concentrates, and other supplies for snowball shaved ice confections.  Defendant has infringed Plaintiffs' registered trademarks.  Plaintiff Southern Snow Mfg. Co., Inc, has a business need to offer and sell the flavor concentrates and other supplies for which Defendant asserts trademark rights.

## FEDERAL TRADEMARK INFRINGEMENT

## SOUTHERN SNOW® and FLAVOR SNOW®

8.    Plaintiffs own federal trademark Registration No. 3082759 for SOUTHERN SNOW for ice shaving machines in Class 007, and for concentrates and syrups used to flavor shaved ice confections in Class 032.

9.    Plaintiffs own federal trademark Registration No. 3258187 for FLAVOR SNOW for ice shaving machines in Class 007, and for concentrates and syrups used to flavor shaved ice confections in Class 032.

10.    Plaintiff Southern Snow Mfg. Co., Inc., (Southern Snow) operates a business selling ice shaving machines, flavoring concentrates, and other supplies for snowball shaved ice confections, in interstate and intrastate commerce, under the federally-registered trademark SOUTHERN SNOW.

11.    Plaintiffs acquired, from the Eisenmann family, the "Flavor Snow" business of selling ice shaving machines, flavoring concentrates, and other supplies for snowball shaved ice confections, which are offered and sold in interstate and intrastate commerce under the federally-registered trademark FLAVOR SNOW

12.    Defendant SnoWizard caused the words "Southern Snow" and "Flavor Snow", and variants thereof, to be published as metatags on SnoWizard's internet website <snowizard.com>.

3

13.    Defendant SnoWizard caused the words "Southern Snow" and "Flavor Snow", and variants thereof, to be published as hidden or invisible text on SnoWizard's internet website <snowizard.com>.

14.    Defendant's use of the words "Southern Snow" and "Flavor Snow", and variants thereof, on the internet website <snowizard.com> was ongoing and continuing as of 1 March 2010.

15.    Defendant's publishing on the internet of Plaintiffs' registered trademarks SOUTHERN SNOW and FLAVOR SNOW is a "use in commerce", under the Lanham Act and corresponding state law, by the Defendant.

16.    Defendant's *purpose* in publishing "Southern Snow" and "Flavor Snow", and variants thereof, as metatags and as hidden text on their internet website is to interfere with customers searching for SOUTHERN SNOW or FLAVOR SNOW by causing Defendant's website <snowizard.com> to appear, improperly, in the customer's search results, diverting the customer from the customer's search specifically targeted toward SOUTHERN SNOW or FLAVOR SNOW.

17.    The *effect* of Defendant's publishing "Southern Snow" and "Flavor Snow", and variants thereof, as metatags and as hidden text on their internet website is to interfere with customers searching for SOUTHERN SNOW or FLAVOR SNOW by causing Defendant's website <snowizard.com> to appear, improperly, in the customer's search results, diverting the customer from the customer's search specifically targeted toward SOUTHERN SNOW or FLAVOR SNOW.

18.    Defendant's interference and diversion of customers searching specifically for SOUTHERN SNOW or FLAVOR SNOW is done literally invisibly and hidden from the customer, and is not an honest or straightforward bid for the customer's consideration, is not comparative advertising, and is not fair use.

19.    Defendant's interference and diversion of customers searching specifically for SOUTHERN SNOW or FLAVOR SNOW, by publishing Plaintiffs' registered trademarks as metatags and hidden text on Defendant's website, is an

4

unlawful misuse and appropriation of Plaintiffs' trademarks and goodwill.

20.   Defendant's interference and diversion of customers searching specifically for SOUTHERN SNOW or FLAVOR SNOW, by publishing Plaintiffs' registered trademarks as metatags and hidden text on Defendant's website, creates a likelihood of confusion.

21.   Defendant's interference and diversion of customers searching specifically for SOUTHERN SNOW or FLAVOR SNOW, by publishing Plaintiffs' registered trademarks as metatags and hidden text on Defendant's website, creates initial interest confusion.

22.   Defendant's actions have disparaged and tarnished Plaintiffs' business and goodwill.

23.   Plaintiffs claim damages, cognizable injury, and ascertainable losses resulting from Defendant's complained-of actions, including but not limited to the cost of paying persons and entities in the internet and computer fields to detect, analyze, and attempt to cancel or mitigate the damages caused by Defendant.

24.   Defendant's actions were perpetrated willfully, and with full knowledge of Plaintiffs' having trademarks in their business names, and full knowledge of the interference and diversion of customer searches that result from misuse and appropriation of trademarks as metatags and hidden text.

25.   Defendant's actions, set forth in detail above, constitute a fraud upon the customers and potential customers of Plaintiffs' business.

26.   Defendant SnoWizard has violated Lanham Act Section 32 (15 USC §1114), and Plaintiffs are entitled to the remedies provided for such violation.

27.   Defendant SnoWizard has violated the Louisiana Unfair Trade Practices Act (LUTPA), La. R.S. 51:1405, *et seq.*, by causing ascertainable losses resulting from Defendant's complained-of actions.

28.   Defendant SnoWizard is liable to Plaintiffs under Louisiana Civil Code Article 2315 for damages caused by Defendant's complained-of actions.

29.   Plaintiff Southern Snow is entitled, under Lanham Act Section 35 (15 USC §1117), to recover damages, enhanced damages, profits, and litigation costs, even in the absence of a finding of fraud or willfulness.

30.   Plaintiff Southern Snow is entitled, under Lanham Act Section 35 (15 USC §1117), to recover reasonable attorney fees for Defendant's fraudulent and/or willful acts which make this case exceptional.

31.   Plaintiff Southern Snow is entitled, under the Louisiana Unfair Trade Practices Act (LUTPA), to recover damages for Defendant's actions, even in the absence of a finding of fraud or willfulness.

32.   Plaintiff Southern Snow is entitled, under the LUTPA, to recover treble damages and to recover reasonable attorney fees for Defendant's fraudulent and/or willful actions.

33.   Plaintiff Southern Snow is entitled, under Louisiana Civil Code Article 2315, to recover damages for Defendant's actions, even in the absence of a finding of fraud or willfulness.

## FRAUD & UNFAIR COMPETITION & TRADE PRACTICES

### Allegations Common to Claims Against Several Purported Trademarks

34.   Fraudulent federal registration of a trademark most specifically invokes Lanham Act Section 38 (15 USC §1120) and Section 37 (15 USC §1119), which are considered *in pari materia* with the entire Lanham Act.

35.   Fraudulent registration of a trademark is also unfair competition or trade practice under Lanham Act Section 43 (15 USC §1125), considered *in pari materia* with the entire Lanham Act, and under the Louisiana Unfair Trade Practices Act (LUTPA), La. R.S. 51:1405, *et seq.*, and Louisiana Civil Code Article 2315.

36.   Unlawful assertion of a trademark *not* federally registered, including assertion of state-registered or common-law trademarks, is unfair competition or trade practice, implicating Lanham Act Section 43 (15 USC §1125), considered *in pari materia* with the entire Lanham Act, and under the Louisiana Unfair Trade

Practices Act (LUTPA), La. R.S. 51:1405, *et seq*., and Louisiana Civil Code Article 2315.

37.     Application for federal registration of a trademark is deemed constructive use of the mark as a federal trademark under Lanham Act Section 7(c) (15 USC 1057(c)), and is, consequently, an assertion of having a federal trademark.

38.     Remedies under the federal Lanham Act are provided in various sections of the Act and are applicable to various violations of other sections of the Act. Provided remedies include damages, enhanced damages, profits, costs, reasonable attorney fees, and injunctive and other equitable relief.

39.     Remedies under the Louisiana Unfair Trade Practices Act (LUTPA) include damages, treble damages, and recovery of costs and reasonable attorney fees.  Treble damages are available for "willful" violations of the Act, and single damages are available for non-willful violations.

40.     Louisiana state-law trademarks are governed by La. R.S. 51:211, *et seq*.  La. R.S. 51:219 provides that a mark shall be cancelled, *inter alia*, when a court of competent jurisdiction orders such a cancellation on any ground, including any finding that the registrant is not the owner of the mark, that the registration was granted improperly, or that the registration was obtained fraudulently.

41.     In order to obtain Louisiana state trademark registrations, as Defendant has, the applicant must submit a signed and notarized sworn statement, swearing that the applicant is the owner of the mark, and that no other has the right to use the mark in the indicated class.  The applicant must also swear that the facts alleged in the application, which includes the dates of first use, are true.

42.     Fraud upon the USPTO for the purpose of trademark registration is a false statement or the witholding of material information by an applicant, made willfully, in bad faith, and with the intent to obtain a registration to which the applicant is not entitled, where the truth of the matter, if disclosed to the USPTO, would have resulted in disallowance of registration.

43.    Fraud upon the State of Louisiana for the purpose of trademark registration is a false statement or the withholding of material information by an applicant, made willfully, in bad faith, and with the intent to obtain a registration to which the applicant is not entitled, where the truth of the matter, if disclosed to the State, would have resulted in disallowance of registration.

### CAJUN RED HOT

44.    Defendant applied for federal trademark registration for CAJUN RED HOT in International Class 030, for "food flavorings", on 13 May 2008, in application No. 77472649, which is a pending application.

45.    Defendant's attorney later amended the description of goods to "flavoring concentrate for non-nutritional purposes, namely, flavoring concentrate for shaved ice confections", still in Class 030, on 21 September 2009.

46.    Ronald R. Sciortino, Defendant's President, signed the CAJUN RED HOT application and attested to the truthfulness and accuracy of the statements made.

47.    Ronald R. Sciortino, Defendant's President, signed the Declaration in the CAJUN RED HOT application and attested to the truthfulness and accuracy of the statements made, acknowledging the Declaration's warning "that willful false statements and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. Section 1001, and that such willful false statements, and the like, may jeopardize the validity of the application or any resulting registration".

48.    Defendant SnoWizard stated in a solemn declaration to the USPTO on 13 May 2008 that Defendant was the owner of the trademark CAJUN RED HOT sought to be registered and that no other firm has the right to use the mark in commerce in identical form or in near resemblance.

49.    Defendant stated to the USPTO on 13 May 2008 that its first use and first use in commerce date for CAJUN RED HOT was 31 May 1988.

50.    Defendant SnoWizard obtained, on 25 July 2008, a Louisiana state Trade Mark Registration No. 60-2744 for CAJUN RED HOT for "food flavoring

concentrate for baked and frozen desserts, snoballs and shaved ice confections" in Class 30, with a claimed date first used and date first used in Louisiana of 16 February 2008.

51.     Defendant submitted a solemn statement to the Louisiana Secretary of State, attesting to the truth and accuracy of the statements made in obtaining Louisiana registration of CAJUN RED HOT.

52.     Defendant claims a trademark in CAJUN RED HOT by affixing a "TM" to the flavor name in Defendant's promotional materials and advertising.

53.     Defendant sold a generic or descriptive "Cajun Red Hot" flavor concentrate for more than five years with no claim of trademark or exclusivity.

54.     Defendant's own promotional literature, including its 2007 "Flavor-Color-Description" list, identifies the "Cajun Red Hot" flavor concentrate as having the color "Red", and the description: "Hot, Cinnamon flavor.  Tastes like 'Red Hot Candies'".

55.     "Cajun Red Hot" is a *generic* identifier for the flavor name of the snowball shaved ice confection that results from using Defendant's "Cajun Red Hot" flavoring concentrate as directed.

56.     "Cajun Red Hot" is a *functional* identifier for a flavoring concentrate which, when used as directed, produces a generic and functional "Cajun Red Hot" ready-to-use syrup for pouring over shaved ice to be sold to the customers of Defendant's customers.

57.     "Cajun Red Hot" is merely *descriptive* of a flavoring concentrate for producing a snowball shaved ice confection having the taste, color, and smell of a "Cajun Red Hot" candy, and has not acquired any distinctiveness because of the short period of Defendant's use, non-exclusive use, and use by others.

58.     The USPTO, in an Office Action issued 12 August 2008 and a final Office Action issued 15 October 2009, refused the application because, *inter alia*, "Cajun Red Hot" is merely descriptive of the goods.

59.   The question whether Defendant exclusively used the mark in commerce as a trademark for a significant amount of time is a material question because such use is required in order to overcome a finding of descriptiveness, as was made by the USPTO.

60.   Defendant's false statement about its ownership of the mark CAJUN RED HOT through exclusive use in commerce is a false statement regarding a material fact because acquired distinctiveness or secondary meaning, through exclusive use in commerce for a significant period, is required in order to overcome a finding of descriptiveness, as was made by the USPTO.

61.   Defendant's false statements regarding Defendant's right to the mark CAJUN RED HOT, the absence of any others' right to the generic term, and purported exclusive use of the term, are a fraud upon the USPTO, being false statements of material information by Defendant, made willfully, in bad faith, and with the intent to obtain a registration to which the Defendant was not entitled, where the truth of the matter, if disclosed to the USPTO, would have resulted in disallowance of registration.

62.   Defendant's false statements regarding the date of first use are a fraud upon the USPTO, being false statements of material information by Defendant, made willfully, in bad faith, and with the intent to obtain a registration to which the Defendant was not entitled, where the truth of the matter, if disclosed to the USPTO, would have resulted in disallowance of registration.

63.   Defendant's false statements are also a fraud upon the State of Louisiana, being false statements of material information by Defendant, made willfully, in bad faith, and with the intent to obtain a registration to which the Defendant was not entitled, where the truth of the matter, if disclosed to the State of Louisiana, would have resulted in disallowance of registration.

64.   Defendant's false assertion of a trademark in CAJUN RED HOT is a misstatement of material fact to the customers and potential customers of both

Plaintiff Southern Snow and Defendant SnoWizard.

65.    Defendant has disparaged and tarnished Plaintiff's business.

66.    Plaintiffs claim damages, cognizable injury, and ascertainable losses resulting from Defendant's complained-of actions, including but not limited to the costs and lost profits resulting from not being able to offer or sell "Cajun Red Hot" flavor concentrate to customers without exposure to a claim of trademark infringement from Defendant, and the costs and lost profits resulting from customers assuming that Defendant's bogus trademark is valid, and purchasing from Defendant without even enquiring about the purported trademark.

67.    Defendant's actions were perpetrated willfully, and with full knowledge of Defendant's having no legitimate trademark rights in CAJUN RED HOT.

68.    Defendant's actions regarding CAJUN RED HOT constitute a fraud upon the customers and potential customers of Plaintiffs' business.

69.    Defendant's actions regarding CAJUN RED HOT were ongoing and continuing as of 1 March 2010.

70.    Regarding CAJUN RED HOT, Defendant SnoWizard has violated Lanham Act Section 43 (15 USC §1125), and Plaintiffs are entitled to the remedies provided for such violation.

71.    Regarding CAJUN RED HOT, Defendant SnoWizard has violated the Louisiana Unfair Trade Practices Act (LUTPA), La. R.S. 51:1405, *et seq*., by causing ascertainable losses resulting from Defendant's complained-of actions.

72.    Regarding CAJUN RED HOT, Defendant SnoWizard is liable to Plaintiffs under Louisiana Civil Code Article 2315 for damages caused by Defendant's complained-of actions.

73.    Regarding CAJUN RED HOT, Plaintiff Southern Snow is entitled, under Lanham Act Section 35 (15 USC §1117), to recover damages, enhanced damages, profits, and litigation costs, even in the absence of a finding of fraud or willfulness.

74.     Regarding CAJUN RED HOT, Plaintiff Southern Snow is entitled, under Lanham Act Section 35 (15 USC §1117), to recover reasonable attorney fees for Defendant's fraudulent and/or willful acts which make this case exceptional.

75.     Regarding CAJUN RED HOT, Plaintiff Southern Snow is entitled, under the Louisiana Unfair Trade Practices Act (LUTPA), to recover damages for Defendant's actions, even in the absence of a finding of fraud or willfulness.

76.     Regarding CAJUN RED HOT, Plaintiff Southern Snow is entitled, under the LUTPA, to recover treble damages and to recover reasonable attorney fees for Defendant's fraudulent and/or willful actions.

77.     Regarding CAJUN RED HOT, Plaintiff Southern Snow is entitled to an order cancelling the Louisiana Trade Mark registration under La. R.S. 51:219.

78.     Regarding CAJUN RED HOT, Plaintiff Southern Snow is entitled, under Louisiana Civil Code Article 2315, to recover damages for Defendant's actions, even in the absence of a finding of fraud or willfulness.

## CHAI LATTEA

79.     Defendant SnoWizard claims a common-law trademark in the purported mark CHAI LATTEA, as evidenced by, *inter alia*, Defendant's placing a "TM" adjacent to the flavor concentrate name in its promotional literature.

80.     Defendant's own promotional literature has described its "Chai Lattea" snowball flavoring concentrate as follows: "Chai Lattea™ is our *latte* milk creation of Chai tea. Chai is pronounced as a single syllable and rhymes with *pie*. It is the word for tea in many parts of the world and is a centuries-old beverage. The taste comes from a blend of rare teas, milk exotic spices and pure vanilla extract. Color: Opaque Yellow".

81.     "Chai Lattea" is a *generic* identifier for a flavoring concentrate which, when used as directed, produces a generic "Chai Lattea" ready-to-use syrup for pouring over shaved ice to be sold to the customers of Defendant's customers.

12

82.    "Chai Lattea" is a *functional* identifier for a flavoring concentrate which, when used as directed, produces a generic and functional "Chai Lattea" ready-to-use syrup for pouring over shaved ice to be sold to the customers of Defendant's customers.

83.    "Chai Lattea" is merely *descriptive* of a flavoring concentrate for producing a snowball shaved ice confection having the taste, color, and smell of tea and milk.

84.    "Chai Lattea" is generic, functional, and merely descriptive under the common law of trademark, and cannot serve as a trademark.

85.    Defendant's claim of a common-law trademark in CHAI LATTEA is therefore unsupported and unsupportable, and is made in bad faith.

86.    Defendant's false assertion of a trademark in CHAI LATTEA is a misstatement of material fact to the customers and potential customers of both Plaintiff Southern Snow and Defendant SnoWizard.

87.    Defendant has disparaged and tarnished Plaintiff's business.

88.    Plaintiffs claim damages, cognizable injury, and ascertainable losses resulting from Defendant's complained-of actions, including but not limited to the costs and lost profits resulting from not being able to offer or sell "Chai Lattea" flavor concentrate to customers without exposure to a claim of trademark infringement from Defendant, and the costs and lost profits resulting from customers assuming that Defendant's bogus trademark is valid, and purchasing from Defendant without even enquiring about the purported trademark.

89.    Defendant's actions were perpetrated willfully, and with full knowledge of Defendant's having no legitimate trademark rights in CHAI LATTEA.

90.    Defendant's actions regarding CHAI LATTEA constitute a fraud upon the customers and potential customers of Plaintiffs' business.

91.    Defendant's actions regarding CHAI LATTEA were ongoing and continuing as of 1 March 2010.

92.     Regarding CHAI LATTEA, Defendant SnoWizard has violated Lanham Act Section 43 (15 USC §1125), and Plaintiffs are entitled to the remedies provided for such violation.

93.     Regarding CHAI LATTEA, Defendant SnoWizard has violated the Louisiana Unfair Trade Practices Act (LUTPA), La. R.S. 51:1405, *et seq.*, by causing ascertainable losses resulting from Defendant's complained-of actions.

94.     Regarding CHAI LATTEA, Defendant SnoWizard is liable to Plaintiffs under Louisiana Civil Code Article 2315 for damages caused by Defendant's complained-of actions.

95.     Regarding CHAI LATTEA, Plaintiff Southern Snow is entitled, under Lanham Act Section 35 (15 USC §1117), to recover damages, enhanced damages, profits, and litigation costs, even in the absence of a finding of fraud or willfulness.

96.     Regarding CHAI LATTEA, Plaintiff Southern Snow is entitled, under Lanham Act Section 35 (15 USC §1117), to recover reasonable attorney fees for Defendant's fraudulent and/or willful acts which make this case exceptional.

97.     Regarding CHAI LATTEA, Plaintiff Southern Snow is entitled, under the Louisiana Unfair Trade Practices Act (LUTPA), to recover damages for Defendant's actions, even in the absence of a finding of fraud or willfulness.

98.     Regarding CHAI LATTEA, Plaintiff Southern Snow is entitled, under the LUTPA, to recover treble damages and to recover reasonable attorney fees for Defendant's fraudulent and/or willful actions.

99.     Regarding CHAI LATTEA, Plaintiff Southern Snow is entitled, under Louisiana Civil Code Article 2315, to recover damages for Defendant's actions, even in the absence of a finding of fraud or willfulness.

## COOKIE DOUGH

100.    Defendant applied for federal trademark registration for COOKIE DOUGH in International Class 030, for "food flavorings", on 16 July 2008, in application No. 77524268, which is a pending application.

101.   Ronald R. Sciortino, Defendant's President, signed the COOKIE DOUGH application and attested to the truthfulness and accuracy of the statements made.

102.   Ronald R. Sciortino, Defendant's President, signed the Declaration in the COOKIE DOUGH application and attested to the truthfulness and accuracy of the statements made, acknowledging the Declaration's warning "that willful false statements and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. Section 1001, and that such willful false statements, and the like, may jeopardize the validity of the application or any resulting registration".

103.   Defendant SnoWizard stated in a solemn declaration to the USPTO on 16 July 2008 that Defendant was the owner of the trademark COOKIE DOUGH sought to be registered and that no other firm has the right to use the mark in commerce in identical form or in near resemblance.

104.   Defendant submitted as a specimen of use a label from a bottle of Defendant's flavoring concentrate for non-nutritional purposes, namely, flavoring concentrate for shaved ice confections.  Therefore Defendant's submitted specimen failed to show Defendant's use of the mark COOKIE DOUGH for "food flavoring" as claimed in the application, but instead showed use of the mark for flavoring concentrates for non-nutritional purposes, namely, flavoring concentrate for shaved ice confections.

105.   Defendant stated to the USPTO on 16 July 2008 that its first use and first use in commerce date for COOKIE DOUGH was 21 April 2007.

106.   Defendant SnoWizard obtained, on 25 July 2008, a Louisiana state Trade Mark Registration No. 60-2747 for COOKIE DOUGH for "food flavoring concentrate for baked and frozen desserts, snoballs and shaved ice confections" in Class 30, with a claimed date first used and date first used in Louisiana of 21 April 2008.

107.   Defendant submitted a solemn statement to the Louisiana Secretary

of State, attesting to the truth and accuracy of the statements made in obtaining Louisiana registration of COOKIE DOUGH.

108.   Defendant claims a trademark in COOKIE DOUGH by affixing a "TM" to the flavor name in Defendant's promotional materials and advertising.

109.   Defendant was not offering or selling "Cookie Dough" flavor concentrate on 21 April 2007, as claimed in the federal application.

110.   Defendant's own promotional literature, including its present internet website entry, identifies the "Cookie Dough" flavor concentrate as having the color "Brown", and the description: "The delicious and playful taste of cookie dough just like Mom used to make but without the mixing bowl".

111.   "Cookie Dough" is a *generic* identifier for the flavor name of the snowball shaved ice confection that results from using Defendant's "Cookie Dough" flavoring concentrate as directed.

112.   "Cookie Dough" is a *functional* identifier for a flavoring concentrate which, when used as directed, produces a generic and functional "Cookie Dough" ready-to-use syrup for pouring over shaved ice to be sold to the customers of Defendant's customers.

113.   "Cookie Dough" is merely *descriptive* of a flavoring concentrate for producing a snowball shaved ice confection having the taste, color, and smell of cookie dough, and has not acquired any distinctiveness because of the short period of Defendant's use, non-exclusive use, and use by others.

114.   The USPTO, in an Office Action issued 23 October 2008 and a final Office Action issued 16 June 2009, refused the application because "Cookie Dough" is merely descriptive of the goods.

115.   The question whether Defendant exclusively used the mark in commerce as a trademark for a significant amount of time is a material question because such use is required in order to overcome a finding of descriptiveness, as was made by the USPTO.

16

116.   Defendant's false statement about its ownership of the mark COOKIE DOUGH through exclusive use in commerce is a false statement regarding a material fact because acquired distinctiveness or secondary meaning, through exclusive use in commerce for a significant period, is required in order to overcome a finding of descriptiveness, as was made by the USPTO.

117.   Defendant's false statements regarding Defendant's right to the mark COOKIE DOUGH, the absence of any others' right to the generic term, and purported exclusive use of the term, are a fraud upon the USPTO, being false statements of material information by Defendant, made willfully, in bad faith, and with the intent to obtain a registration to which the Defendant was not entitled, where the truth of the matter, if disclosed to the USPTO, would have resulted in disallowance of registration.

118.   Defendant's false statements regarding the identification of goods and date of first use are a fraud upon the USPTO, being false statements of material information by Defendant, made willfully, in bad faith, and with the intent to obtain a registration to which the Defendant was not entitled, where the truth of the matter, if disclosed to the USPTO, would have resulted in disallowance of registration.

119.   Defendant's false statements are also a fraud upon the State of Louisiana, being false statements of material information by Defendant, made willfully, in bad faith, and with the intent to obtain a registration to which the Defendant was not entitled, where the truth of the matter, if disclosed to the State of Louisiana, would have resulted in disallowance of registration.

120.   Defendant's false assertion of a trademark in COOKIE DOUGH is a misstatement of material fact to the customers and potential customers of both Plaintiff Southern Snow and Defendant SnoWizard.

121.   Defendant has disparaged and tarnished Plaintiff's business.

122.   Plaintiffs claim damages, cognizable injury, and ascertainable losses resulting from Defendant's complained-of actions, including but not limited to the

17

costs and lost profits resulting from not being able to offer or sell "Cookie Dough" flavor concentrate to customers without exposure to a claim of trademark infringement from Defendant, and the costs and lost profits resulting from customers assuming that Defendant's bogus trademark is valid, and purchasing from Defendant without even enquiring about the purported trademark.

123.   Defendant's actions were perpetrated willfully, and with full knowledge of Defendant's having no legitimate trademark rights in COOKIE DOUGH.

124.   Defendant's actions regarding COOKIE DOUGH constitute a fraud upon the customers and potential customers of Plaintiffs' business.

125.   Defendant's actions regarding COOKIE DOUGH were ongoing and continuing as of 1 March 2010.

126.   Regarding COOKIE DOUGH, Defendant SnoWizard has violated Lanham Act Section 43 (15 USC §1125), and Plaintiffs are entitled to the remedies provided for such violation.

127.   Regarding COOKIE DOUGH, Defendant SnoWizard has violated the Louisiana Unfair Trade Practices Act (LUTPA), La. R.S. 51:1405, *et seq.*, by causing ascertainable losses resulting from Defendant's complained-of actions.

128.   Regarding COOKIE DOUGH, Defendant SnoWizard is liable to Plaintiffs under Louisiana Civil Code Article 2315 for damages caused by Defendant's complained-of actions.

129.   Regarding COOKIE DOUGH, Plaintiff Southern Snow is entitled, under Lanham Act Section 35 (15 USC §1117), to recover damages, enhanced damages, profits, and litigation costs, even in the absence of a finding of fraud or willfulness.

130.   Regarding COOKIE DOUGH, Plaintiff Southern Snow is entitled, under Lanham Act Section 35 (15 USC §1117), to recover reasonable attorney fees for Defendant's fraudulent and/or willful acts which make this case exceptional.

131.   Regarding COOKIE DOUGH, Plaintiff Southern Snow is entitled,

under the Louisiana Unfair Trade Practices Act (LUTPA), to recover damages for Defendant's actions, even in the absence of a finding of fraud or willfulness.

132.   Regarding COOKIE DOUGH, Plaintiff Southern Snow is entitled, under the LUTPA, to recover treble damages and to recover reasonable attorney fees for Defendant's fraudulent and/or willful actions.

133.   Regarding COOKIE DOUGH, Plaintiff Southern Snow is entitled to an order cancelling the Louisiana Trade Mark registration under La. R.S. 51:219.

134.   Regarding COOKIE DOUGH, Plaintiff Southern Snow is entitled, under Louisiana Civil Code Article 2315, to recover damages for Defendant's actions, even in the absence of a finding of fraud or willfulness.

## MOUNTAIN MAPLE

135.   Defendant SnoWizard applied for federal trademark registration for MOUNTAIN MAPLE in International Class 030, for "food flavorings", on 13 May 2008, in application No. 77472648.

136.   Defendant obtained Registration No. 3543583 for MOUNTAIN MAPLE in International Class 030, for "food flavorings", on 9 December 2008.

137.   Ronald R. Sciortino, Defendant's President, signed the MOUNTAIN MAPLE application and attested to the truthfulness and accuracy of the statements made.

138.   Ronald R. Sciortino, Defendant's President, signed the Declaration in the MOUNTAIN MAPLE application and attested to the truthfulness and accuracy of the statements made, acknowledging the Declaration's warning "that willful false statements and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. Section 1001, and that such willful false statements, and the like, may jeopardize the validity of the application or any resulting registration".

139.   Defendant SnoWizard stated in a solemn declaration to the USPTO on 13 May 2008 that Defendant was the owner of the trademark MOUNTAIN MAPLE

sought to be registered and that no other firm has the right to use the mark in commerce in identical form or in near resemblance.

140.   Defendant submitted as a specimen of use a label from a bottle of Defendant's flavoring concentrate for non-nutritional purposes, namely, flavoring concentrate for shaved ice confections.  Therefore Defendant's submitted specimen failed to show Defendant's use of the mark MOUNTAIN MAPLE for "food flavoring" as claimed in the application, but instead showed use of the mark for flavoring concentrates for non-nutritional purposes, namely, flavoring concentrate for shaved ice confections.

141.   Defendant stated to the USPTO on 13 May 2008 that its first use and first use in commerce date for MOUNTAIN MAPLE was 31 May 1985.

142.   Defendant SnoWizard obtained, on 25 July 2008, a Louisiana state Trade Mark Registration No. 60-2752 for MOUNTAIN MAPLE for "food flavoring concentrate for baked and frozen desserts, snoballs and shaved ice confections" in Class 30, with a claimed date first used and date first used in Louisiana of 31 May 1985.

143.   Defendant submitted a solemn statement to the Louisiana Secretary of State, attesting to the truth and accuracy of the statements made in obtaining Louisiana registration of MOUNTAIN MAPLE.

144.   Defendant claims a federally-registered trademark in MOUNTAIN MAPLE by affixing a circle-R to the flavor name in Defendant's promotional materials and advertising.

145.   Defendant sold a generic or descriptive "Mountain Maple" flavor concentrate for more than five years with no claim of trademark or exclusivity.

146.   Defendant's own promotional literature, including its 2007 "Flavor-Color-Description" list, identifies the "Mountain Maple" flavor concentrate as having the color "Brown", and the description: "Just like Maple syrup right from the barrel".

20

147.   "Mountain Maple" is a *generic* identifier for the flavor name of the snowball shaved ice confection that results from using Defendant's "Mountain Maple" flavoring concentrate as directed.

148.   "Mountain Maple" is a *functional* identifier for a flavoring concentrate which, when used as directed, produces a generic and functional "Mountain Maple" ready-to-use syrup for pouring over shaved ice to be sold to the customers of Defendant's customers.

149.   "Mountain Maple" is merely *descriptive* of a flavoring concentrate for producing a snowball shaved ice confection having the taste, color, and smell of maple syrup produced in the mountains, and has not acquired any distinctiveness because of the long period of Defendant's own non-exclusive use.

150.   Defendant's false statements regarding Defendant's right to the mark MOUNTAIN MAPLE, the absence of any others' right to the generic term, and purported exclusive use of the term, are a fraud upon the USPTO, being false statements of material information by Defendant, made willfully, in bad faith, and with the intent to obtain a registration to which the Defendant was not entitled, where the truth of the matter, if disclosed to the USPTO, would have resulted in disallowance of registration.

151.   Defendant's false statements regarding the identification of goods are a fraud upon the USPTO, being false statements of material information by Defendant, made willfully, in bad faith, and with the intent to obtain a registration to which the Defendant was not entitled, where the truth of the matter, if disclosed to the USPTO, would have resulted in disallowance of registration.

152.   Defendant's false statements are also a fraud upon the State of Louisiana, being false statements of material information by Defendant, made willfully, in bad faith, and with the intent to obtain a registration to which the Defendant was not entitled, where the truth of the matter, if disclosed to the State of Louisiana, would have resulted in disallowance of registration.

21

153.   Defendant's false assertion of a trademark in MOUNTAIN MAPLE is a misstatement of material fact to the customers and potential customers of both Plaintiff Southern Snow and Defendant SnoWizard.

154.   Defendant has disparaged and tarnished Plaintiff's business.

155.   Plaintiffs claim damages, cognizable injury, and ascertainable losses resulting from Defendant's complained-of actions, including but not limited to the costs and lost profits resulting from not being able to offer or sell "Mountain Maple" flavor concentrate to customers without exposure to a claim of trademark infringement from Defendant, and the costs and lost profits resulting from customers assuming that Defendant's bogus trademark is valid, and purchasing from Defendant without even enquiring about the purported trademark.

156.   Defendant's actions were perpetrated willfully, and with full knowledge of Defendant's having no legitimate trademark rights in MOUNTAIN MAPLE.

157.   Defendant's actions regarding MOUNTAIN MAPLE constitute a fraud upon the customers and potential customers of Plaintiffs' business.

158.   Defendant's actions regarding MOUNTAIN MAPLE were ongoing and continuing as of 1 March 2010.

159.   Regarding MOUNTAIN MAPLE, Defendant SnoWizard has violated Lanham Act Section 38 (15 USC §1120) and Section 43 (15 USC §1125), and Plaintiffs are entitled to the remedies provided for such violations.

160.   Regarding MOUNTAIN MAPLE, Defendant SnoWizard has violated the Louisiana Unfair Trade Practices Act (LUTPA), La. R.S. 51:1405, *et seq.*, by causing ascertainable losses resulting from Defendant's complained-of actions.

161.   Regarding MOUNTAIN MAPLE, Defendant SnoWizard is liable to Plaintiffs under Louisiana Civil Code Article 2315 for damages caused by Defendant's complained-of actions.

162.   Regarding MOUNTAIN MAPLE, Plaintiff Southern Snow is entitled, under Lanham Act Section 38 (15 USC §1120), to recover damages for Defendant's

22

fraudulently obtaining Registration No. 3543583 of MOUNTAIN MAPLE.

163.   Regarding MOUNTAIN MAPLE, Plaintiff Southern Snow is entitled, under Lanham Act Section 37 (15 USC §1119), to the cancellation of the federal registration of MOUNTAIN MAPLE.

164.   Regarding MOUNTAIN MAPLE, Plaintiff Southern Snow is entitled, under Lanham Act Section 35 (15 USC §1117), to recover damages, enhanced damages, profits, and litigation costs, even in the absence of a finding of fraud or willfulness.

165.   Regarding MOUNTAIN MAPLE, Plaintiff Southern Snow is entitled, under Lanham Act Section 35 (15 USC §1117), to recover reasonable attorney fees for Defendant's fraudulent and/or willful acts which make this case exceptional.

166.   Regarding MOUNTAIN MAPLE, Plaintiff Southern Snow is entitled, under the Louisiana Unfair Trade Practices Act (LUTPA), to recover damages for Defendant's actions, even in the absence of a finding of fraud or willfulness.

167.   Regarding MOUNTAIN MAPLE, Plaintiff Southern Snow is entitled, under the LUTPA, to recover treble damages and to recover reasonable attorney fees for Defendant's fraudulent and/or willful actions.

168.   Regarding MOUNTAIN MAPLE, Plaintiff Southern Snow is entitled to an order cancelling the Louisiana Trade Mark registration under La. R.S. 51:219.

169.   Regarding MOUNTAIN MAPLE, Plaintiff Southern Snow is entitled, under Louisiana Civil Code Article 2315, to recover damages for Defendant's actions, even in the absence of a finding of fraud or willfulness.

## SNOFREE

170.   Defendant applied for federal trademark registration for SNOFREE in International Class 30, for "unflavored, unsweetened syrup mixes", on 5 February 2009, in application No. 77664442, which was granted as Registration No. 3580057 on 18 August 2009.

171.   Ronald R. Sciortino, Defendant's President, signed the Declaration in the SNOFREE application and attested to the truthfulness and accuracy of the statements made, acknowledging the Declaration's warning "that willful false statements and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. Section 1001, and that such willful false statements, and the like, may jeopardize the validity of the application or any resulting registration".

172.   As a required specimen showing the mark being used, Defendant submitted to the USPTO on 5 February 2009 a computer-generated design for a label, not an actual, usable label, which shows no evidence of being affixed to any goods, and which is in fact an altered version of the label for Defendant's SNOLITE goods, where only the word "SnoLite" has been replaced by "SnoFree", and where the ingredients and all other information are the same.

173.   As a required specimen showing the mark being used, Defendant submitted to the USPTO on 5 February 2009 a design for a label which shows on its face that the goods are a sugar-free sweetener mix, and not the "unflavored, unsweetened syrup mixes" claimed in the application.

174.   Defendant SnoWizard stated to the USPTO on 5 February 2009 that Defendant had been using the mark SNOFREE and using the mark in commerce since 1 November 1994.

175.   Defendant SnoWizard obtained, on 25 July 2008, a Louisiana state Trade Mark Registration No. 60-2754 for SNOFREE for "sugar substitute for baked and frozen desserts, snoballs, snow cone and shaved ice confections" in Class 30, with a claimed date first used and date first used in Louisiana of 16 February 2008.

176.   Defendant submitted a solemn statement to the Louisiana Secretary of State, attesting to the truth and accuracy of the statements made in obtaining Louisiana registration of SNOFREE.

177.   Defendant was not using the mark SNOFREE and was not using the mark SNOFREE in commerce on 1 November 1994.

24

178.   Defendant has never used the mark SNOFREE, and is not using the mark SNOFREE even at present, as can be ascertained from Defendant's present online and printed promotional materials.

179.   Defendant previously obtained a federal registration of the mark SNOFREE for "non-flavored syrup mixes for shaved ice confections" in Class 030, Registration No. 2555059, granted 2 April 2002 and cancelled 10 January 2009.

180.   Although Defendant's cancelled Registration No. 2555059 may be considered a constructive use of the mark as of the 30 May 2000 filing date, Defendant's non-use of the mark for nine (9) years 2000 through 2009 is an abandonment of the mark.

181.   Defendant's false statement regarding use of the mark SNOFREE and Defendant's falsified specimen purporting to show the mark in use on Defendant's goods are a fraud upon the USPTO, being false statements of material information by Defendant, made willfully, in bad faith, and with the intent to obtain a registration to which the Defendant was not entitled, where the truth of the matter, if disclosed to the USPTO, would have resulted in disallowance of registration.

182.   Defendant SnoWizard stated in a solemn declaration to the USPTO on 5 February 2009 that Defendant was the owner of the trademark SNOFREE sought to be registered and that no other firm has the right to use the mark in commerce in identical form or in near resemblance.

183.   Defendant did not in fact own a trademark in SNOFREE at the time of making its solemn declaration because Defendant was not selling or offering goods having the mark SNOFREE at the time of making the declaration nor at any time before or since.

184.   Defendant knew that it was not offering and did not have a trademark in SNOFREE on 5 February 2009 when Defendant made its solemn declaration.

185.   Defendant's false statements in its solemn declaration regarding Defendant's right to the mark SNOFREE is a fraud upon the USPTO, being a false

statement and the withholding of material information by Defendant, made willfully, in bad faith, and with the intent to obtain a registration to which the Defendant was not entitled, where the truth of the matter, if disclosed to the USPTO, would have resulted in disallowance of registration.

186. Defendant's false statements are also a fraud upon the State of Louisiana, being false statements of material information by Defendant, made willfully, in bad faith, and with the intent to obtain a registration to which the Defendant was not entitled, where the truth of the matter, if disclosed to the State of Louisiana, would have resulted in disallowance of registration.

187. Plaintiff Southern Snow made plans to use the name "Snow Free" for its own sugar-free syrup mixes, relying on the 10 January 2009 cancellation of Defendant's previous Registration No. 2555059, and relying upon Defendant's non-use of the mark for over five years. Such plans by Plaintiff Southern Snow included the expenditure of time and money in preparing to label and offer the product.

188. Plaintiff Southern Snow was forced to abandon and recall its projected and prepared-for use of "Snow Free" when Defendant SnoWizard was improvidently granted a new Registration No. 3669190 for SNOFREE on 18 August 2009.

189. Plaintiff Southern Snow suffered damage, cognizable injury, and ascertainable loss as a result of Defendant SnoWizard's actions, including but not limited to the costs of the abandoned and recalled preparations for offering the product, Plaintiff's lost sales of the product, and the value of any sales by Defendant of the product, if any such sales there be.

190. Defendant has disparaged and tarnished Plaintiff's business.

191. Defendant's actions regarding SNOFREE constitute a fraud upon the customers and potential customers of Plaintiffs' business.

192. Defendant's actions regarding SNOFREE were ongoing and continuing as of 1 March 2010.

193. Regarding SNOFREE, Defendant SnoWizard has violated Lanham

Act Section 38 (15 USC §1120) and Section 43 (15 USC §1125), and Plaintiffs are entitled to the remedies provided for such violations.

194.   Regarding SNOFREE, Plaintiff Southern Snow is entitled, under Lanham Act Section 38 (15 USC §1120), to recover damages in consequence of Defendant SnoWizard's fraudulent procurement of registration of SNOFREE.

195.   Regarding SNOFREE, Plaintiff Southern Snow is entitled, under Lanham Act Section 37 (15 USC §1119), to an order cancelling Registration No. 3580057 for SNOFREE.

196.   Regarding SNOFREE, Plaintiff Southern Snow is entitled, under Lanham Act Section 35 (15 USC §1117), to recover damages, enhanced damages, profits, litigation costs, and reasonable attorney fees for Defendant's fraudulent and willful acts which make this case exceptional.

197.   Regarding SNOFREE, Plaintiff Southern Snow is entitled, under the Louisiana Unfair Trade Practices Act (LUTPA), to recover damages for Defendant's actions.

198.   Regarding SNOFREE, Plaintiff Southern Snow is entitled, under the LUTPA, to recover treble damages and to recover reasonable attorney fees for Defendant's fraudulent and willful actions.

199.   Regarding SNOFREE, Plaintiff Southern Snow is entitled to an order cancelling the Louisiana Trade Mark registration under La. R.S. 51:219.

200.   Regarding SNOFREE, Plaintiff Southern Snow is entitled, under Louisiana Civil Code Article 2315, to recover damages for Defendant's actions.

## SNOSOUR

201.   Defendant applied for federal trademark registration for SNOSOUR in International Class 030, for food flavorings", on 5 February 2009 in application No. 77663849.

202.   Defendant obtained Registration No. 3666716 for SNOSOUR in International Class 030, for "food flavorings", on 11 August 2009.

203.   Ronald R. Sciortino, Defendant's President, signed the Declaration in the SNOSOUR application and attested to the truthfulness and accuracy of the statements made, acknowledging the Declaration's warning "that willful false statements and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. Section 1001, and that such willful false statements, and the like, may jeopardize the validity of the application or any resulting registration".

204.   Defendant SnoWizard stated in a solemn declaration to the USPTO on 5 February 2009 that Defendant was the owner of the trademark SNOSOUR sought to be registered and that no other firm has the right to use the mark in commerce in identical form or in near resemblance.

205.   Defendant previously obtained a federal registration of the mark SNOSOUR for "flavoring additives for non-nutritional purposes, namely, flavoring additives for shaved ice confections" in Class 030, Registration No. 2540343, granted 19 February 2002 and cancelled 21 November 2008.

206.   Defendant submitted as a specimen of use a label from a bottle of Defendant's flavoring additives for non-nutritional purposes, namely, flavoring additives for shaved ice confections.  Therefore Defendant's submitted specimen failed to show Defendant's use of the mark SNOSOUR for "food flavoring" as claimed in the application, but instead showed use of the mark for flavoring additives for non-nutritional purposes, namely, flavoring additives for shaved ice confections.

207.   Defendant stated to the USPTO on 5 February 2009 that its first use and first use in commerce date for SNOSOUR was 1 April 2001.

208.   Defendant claims a trademark in SNOSOUR by affixing a circle-R to the flavor name in Defendant's promotional materials and advertising.

209.   Defendant's own promotional literature, including its present internet website, identifies the "SnoSour" product as follows: "Pucker-up your snoballs and make them into Sour Flavors with SnoSour®".

210.   "SnoSour" is a *generic* identifier for a product to make snowball shaved

ice confections sour when used as directed.

211.   "SnoSour" is a *functional* identifier for a product which, when used as directed, makes sour snowballs to be sold to the customers of Defendant's customers.

212.   "SnoSour" is merely *descriptive* of the sour quality and the intended use on snowballs for the product.

213.   Defendant's false statements regarding the identification of goods are a fraud upon the USPTO, being false statements of material information by Defendant, made willfully, in bad faith, and with the intent to obtain a registration to which the Defendant was not entitled, where the truth of the matter, if disclosed to the USPTO, would have resulted in disallowance of registration.

214.   Defendant's false assertion of a trademark in SNOSOUR is a misstatement of material fact to the customers and potential customers of both Plaintiff Southern Snow and Defendant SnoWizard.

215.   Defendant has disparaged and tarnished Plaintiff's business.

216.   Plaintiffs claim damages, cognizable injury, and ascertainable losses resulting from Defendant's complained-of actions, including but not limited to the costs and lost profits resulting from not being able to offer or sell "SnoSour" flavor concentrate to customers without exposure to a claim of trademark infringement from Defendant, and the costs and lost profits resulting from customers assuming that Defendant's bogus trademark is valid, and purchasing from Defendant without even enquiring about the purported trademark.

217.   Defendant's actions were perpetrated willfully, and with full knowledge of Defendant's having no legitimate trademark rights in SNOSOUR.

218.   Defendant's actions regarding SNOSOUR constitute a fraud upon the customers and potential customers of Plaintiffs' business.

219.   Defendant's actions regarding SNOSOUR were ongoing and continuing as of 1 March 2010.

220.   Regarding SNOSOUR, Defendant SnoWizard has violated Lanham Act Section 38 (15 USC §1120) and Section 43 (15 USC §1125), and Plaintiffs are entitled to the remedies provided for such violations.

221.   Regarding SNOSOUR, Defendant SnoWizard has violated the Louisiana Unfair Trade Practices Act (LUTPA), La. R.S. 51:1405, *et seq.*, by causing ascertainable losses resulting from Defendant's complained-of actions.

222.   Regarding SNOSOUR, Defendant SnoWizard is liable to Plaintiffs under Louisiana Civil Code Article 2315 for damages caused by Defendant's complained-of actions.

223.   Regarding SNOSOUR, Plaintiff Southern Snow is entitled, under Lanham Act Section 38 (15 USC §1120), to recover damages for Defendant's fraudulently obtaining Registration No. 3666716 of SNOSOUR.

224.   Regarding SNOSOUR, Plaintiff Southern Snow is entitled, under Lanham Act Section 37 (15 USC §1119), to the cancellation of the federal registration of SNOSOUR.

225.   Regarding SNOSOUR, Plaintiff Southern Snow is entitled, under Lanham Act Section 35 (15 USC §1117), to recover damages, enhanced damages, profits, and litigation costs, even in the absence of a finding of fraud or willfulness.

226.   Regarding SNOSOUR, Plaintiff Southern Snow is entitled, under Lanham Act Section 35 (15 USC §1117), to recover reasonable attorney fees for Defendant's fraudulent and/or willful acts which make this case exceptional.

227.   Regarding SNOSOUR, Plaintiff Southern Snow is entitled, under the Louisiana Unfair Trade Practices Act (LUTPA), to recover damages for Defendant's actions, even in the absence of a finding of fraud or willfulness.

228.   Regarding SNOSOUR, Plaintiff Southern Snow is entitled, under the LUTPA, to recover treble damages and to recover reasonable attorney fees for Defendant's fraudulent and/or willful actions.

229.   Regarding SNOSOUR, Plaintiff Southern Snow is entitled, under

Louisiana Civil Code Article 2315, to recover damages for Defendant's actions, even in the absence of a finding of fraud or willfulness.

**SNOBALLS (design)**

230.    Defendant applied for federal trademark registration for a design mark having the word mark SNOBALLS in International Class 035, for "concession stands featuring shaved ice confections, namely a concession trailer for snowball vendors including all equipment necessary to operate a viable snowball business", on 11 January 2010, in application No. 77908760, which is a pending application.

231.    Ronald   R.   Sciortino,   Defendant's   President,   signed   the SNOBALLS (design) application and attested to the truthfulness and accuracy of the statements made.

232.    Ronald R. Sciortino, Defendant's President, signed the Declaration in the SNOBALLS (design) application and attested to the truthfulness and accuracy of the statements made, acknowledging the Declaration's warning "that willful false statements and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. Section 1001, and that such willful false statements, and the like, may jeopardize the validity of the application or any resulting registration".

233.    Defendant SnoWizard stated in a solemn declaration to the USPTO on 11 January 2010 that Defendant was the owner of the trademark SNOBALLS (design) sought to be registered and that no other firm has the right to use the mark in commerce in identical form or in near resemblance.

234.    Defendant stated to the USPTO on 11 January 2010 that its first use and first use in commerce date for SNOBALLS (design) was 19 February 2009.

235.    Defendant claims a trademark in SNOBALLS (design) by affixing a "TM" to the goods in Defendant's promotional materials and advertising.

236.    Defendant had not sold or otherwise used in commerce the claimed design for a "Snoballs" concession trailer on the claimed date of 19 February 2009.

237.   Defendant SnoWizard never exclusively sold or exclusively used in commerce any concession trailers equipped for a snowball business and prominently labeled "Snoballs" or the equivalent terms "Snowballs", "Sno-Balls", or "Snow Balls", because Plaintiff and other suppliers have also sold such trailers for many years.

238.   "Snoballs" is a *generic* identifier for the snowball shaved ice confections that the trailer is designed for making and selling.

239.   "Snoballs" is a *functional* identifier for the product made in, and sold from, the trailers when the trailers are used for their stated purpose.

240.   "Snoballs" is merely *descriptive* of the product made in, and sold from, the trailers when the trailers are used for their stated purpose, and has not acquired any distinctiveness because of the short period of Defendant's use, non-exclusive use, and use by others.

241.   The snow covering, and especially the snowball-in-a-cup design of the trailer's roof is merely *descriptive* of the product made in, and sold from, the trailers when the trailers are used for their stated purpose, and has not acquired any distinctiveness because of the short period of Defendant's use, non-exclusive use, and use by others.

242.   A concession trailer equipped for snowball vendors including all equipment necessary to operate a viable snowball business is a *generic* product.

243.   A concession trailer equipped for snowball vendors including all equipment necessary to operate a viable snowball business is a *functional* product.

244.   Defendant's false statements regarding Defendant's right to the mark SNOBALLS (design), the absence of any others' right to the generic term, and purported exclusive use of the term, are a fraud upon the USPTO, being false statements of material information by Defendant, made willfully, in bad faith, and with the intent to obtain a registration to which the Defendant was not entitled, where the truth of the matter, if disclosed to the USPTO, would have resulted in disallowance of registration.

245.   Defendant's false statements regarding date of first use are a fraud upon the USPTO, being false statements of material information by Defendant, made willfully, in bad faith, and with the intent to obtain a registration to which the Defendant was not entitled, where the truth of the matter, if disclosed to the USPTO, would have resulted in disallowance of registration.

246.   Defendant's false assertion of a trademark in SNOBALLS (design) is a misstatement of material fact to the customers and potential customers of both Plaintiff Southern Snow and Defendant SnoWizard.

247.   Defendant has disparaged and tarnished Plaintiff's business.

248.   Plaintiffs claim damages, cognizable injury, and ascertainable losses resulting from Defendant's complained-of actions, including but not limited to the costs and lost profits resulting from not being able to offer or sell "Snoball" concession trailers to customers without exposure to a claim of trademark infringement from Defendant, and the costs and lost profits resulting from customers assuming that Defendant's bogus trademark is valid, and purchasing from Defendant without even enquiring about the purported trademark.

249.   Defendant's actions were perpetrated willfully, and with full knowledge of Defendant's having no legitimate trademark rights in SNOBALLS (design).

250.   Defendant's actions regarding SNOBALLS (design) constitute a fraud upon the customers and potential customers of Plaintiffs' business.

251.   Defendant's actions regarding SNOBALLS (design) were ongoing and continuing as of 1 March 2010.

252.   Regarding SNOBALLS (design), Defendant SnoWizard has violated Lanham Act Section 43 (15 USC §1125), and Plaintiffs are entitled to the remedies provided for such violation.

253.   Regarding SNOBALLS (design), Defendant SnoWizard has violated the Louisiana Unfair Trade Practices Act (LUTPA), La. R.S. 51:1405, *et seq.*, by causing ascertainable losses resulting from Defendant's complained-of actions.

254.   Regarding SNOBALLS (design), Defendant SnoWizard is liable to Plaintiffs under Louisiana Civil Code Article 2315 for damages caused by Defendant's complained-of actions.

255.   Regarding SNOBALLS (design), Plaintiff Southern Snow is entitled, under Lanham Act Section 35 (15 USC §1117), to recover damages, enhanced damages, profits, and litigation costs, even in the absence of a finding of fraud or willfulness.

256.   Regarding SNOBALLS (design), Plaintiff Southern Snow is entitled, under Lanham Act Section 35 (15 USC §1117), to recover reasonable attorney fees for Defendant's fraudulent and/or willful acts which make this case exceptional.

257.   Regarding SNOBALLS (design), Plaintiff Southern Snow is entitled, under the Louisiana Unfair Trade Practices Act (LUTPA), to recover damages for Defendant's actions, even in the absence of a finding of fraud or willfulness.

258.   Regarding SNOBALLS (design), Plaintiff Southern Snow is entitled, under the LUTPA, to recover treble damages and to recover reasonable attorney fees for Defendant's fraudulent and/or willful actions.

259.   Regarding SNOBALLS (design), Plaintiff Southern Snow is entitled, under Louisiana Civil Code Article 2315, to recover damages for Defendant's actions, even in the absence of a finding of fraud or willfulness.

## SWISS ALMOND COCO

260.   Defendant SnoWizard obtained, on 25 July 2008, a Louisiana state Trade Mark Registration No. 60-2756 for SWISS ALMOND COCO for "food flavoring concentrate for baked and frozen desserts, snoballs and shaved ice confections" in Class 30, with a claimed date first used and date first used in Louisiana of 31 May 1986.

261.   Defendant submitted a solemn statement to the Louisiana Secretary of State, attesting to the truth and accuracy of the statements made in obtaining Louisiana registration of SWISS ALMOND COCO.

262.   Defendant claims a trademark in SWISS ALMOND COCO by affixing a "TM" to the flavor name in Defendant's promotional materials and advertising.

263.   Defendant sold a generic or descriptive "Swiss Almond Coco" flavor concentrate for more than five years with no claim of trademark or exclusivity.

264.   Defendant's own promotional literature, including its 2007 "Flavor-Color-Description" list, identifies the "Swiss Almond Coco" flavor concentrate as having the color "Creamy White", and the description: "Special blend of Almond Coconut Chocolate and Cream - outstanding!".

265.   "Swiss Almond Coco" is a *generic* identifier for the flavor name of the snowball shaved ice confection that results from using Defendant's "Swiss Almond Coco" flavoring concentrate as directed.

266.   "Swiss Almond Coco" is a *functional* identifier for a flavoring concentrate which, when used as directed, produces a generic and functional "Swiss Almond Coco" ready-to-use syrup for pouring over shaved ice to be sold to the customers of Defendant's customers.

267.   "Swiss Almond Coco" is merely *descriptive* of a flavoring concentrate for producing a snowball shaved ice confection having the taste, color, and smell of Swiss chocolate, almond, and coconut, and has not acquired any distinctiveness because of the long period of Defendant's own non-exclusive use.

268.   The question whether or not Defendant exclusively used the mark in commerce as a trademark for a significant amount of time is a material question because such use is required for a descriptive mark to be entitled to trademark protection.

269.   Defendant's false statement about its ownership of the mark SWISS ALMOND COCO through exclusive use in commerce is a false statement regarding a material fact because acquired distinctiveness or secondary meaning, through exclusive use in commerce for a significant period, is required for a descriptive mark to be entitled to trademark protection.

35

270.   Defendant's false statements regarding Defendant's right to the mark SWISS ALMOND COCO, the absence of any others' right to the generic term, and purported exclusive use of the term, are a fraud upon the State of Louisiana, being false statements of material information by Defendant, made willfully, in bad faith, and with the intent to obtain a registration to which the Defendant was not entitled, where the truth of the matter, if disclosed to the State of Louisiana, would have resulted in disallowance of registration.

271.   Defendant's false assertion of a trademark in SWISS ALMOND COCO is a misstatement of material fact to the customers and potential customers of both Plaintiff Southern Snow and Defendant SnoWizard.

272.   Defendant has disparaged and tarnished Plaintiff's business.

273.   Plaintiffs claim damages, cognizable injury, and ascertainable losses resulting from Defendant's complained-of actions, including but not limited to the costs and lost profits resulting from not being able to offer or sell "Swiss Almond Coco" flavor concentrate to customers without exposure to a claim of trademark infringement from Defendant, and the costs and lost profits resulting from customers assuming that Defendant's bogus trademark is valid, and purchasing from Defendant without even enquiring about the purported trademark.

274.   Defendant's actions were perpetrated willfully, and with full knowledge of Defendant's having no legitimate trademark rights in SWISS ALMOND COCO.

275.   Defendant's actions regarding SWISS ALMOND COCO constitute a fraud upon the customers and potential customers of Plaintiffs' business.

276.   Defendant's actions regarding SWISS ALMOND COCO were ongoing and continuing as of 1 March 2010.

277.   Regarding SWISS ALMOND COCO, Defendant SnoWizard has violated Lanham Act Section 43 (15 USC §1125), and Plaintiffs are entitled to the remedies provided for such violation.

278.   Regarding SWISS ALMOND COCO, Defendant SnoWizard has violated

36

the Louisiana Unfair Trade Practices Act (LUTPA), La. R.S. 51:1405, *et seq*., by causing ascertainable losses resulting from Defendant's complained-of actions.

279.   Regarding SWISS ALMOND COCO, Defendant SnoWizard is liable to Plaintiffs under Louisiana Civil Code Article 2315 for damages caused by Defendant's complained-of actions.

280.   Regarding SWISS ALMOND COCO, Plaintiff Southern Snow is entitled, under Lanham Act Section 35 (15 USC §1117), to recover damages, enhanced damages, profits, and litigation costs, even in the absence of a finding of fraud or willfulness.

281.   Regarding SWISS ALMOND COCO, Plaintiff Southern Snow is entitled, under Lanham Act Section 35 (15 USC §1117), to recover reasonable attorney fees for Defendant's fraudulent and/or willful acts which make this case exceptional.

282.   Regarding SWISS ALMOND COCO, Plaintiff Southern Snow is entitled, under the Louisiana Unfair Trade Practices Act (LUTPA), to recover damages for Defendant's actions, even in the absence of a finding of fraud or willfulness.

283.   Regarding SWISS ALMOND COCO, Plaintiff Southern Snow is entitled, under the LUTPA, to recover treble damages and to recover reasonable attorney fees for Defendant's fraudulent and/or willful actions.

284.   Regarding SWISS ALMOND COCO, Plaintiff Southern Snow is entitled to an order cancelling the Louisiana Trade Mark registration under La. R.S. 51:219.

285.   Regarding SWISS ALMOND COCO, Plaintiff Southern Snow is entitled, under Louisiana Civil Code Article 2315, to recover damages for Defendant's actions, even in the absence of a finding of fraud or willfulness.

**TIRAMISU**

286.   Defendant SnoWizard obtained, on 25 July 2008, a Louisiana state Trade Mark Registration No. 60-2758 for TIRAMISU for "food flavoring concentrate for baked and frozen desserts, snoballs and shaved ice confections" in Class 30, with a claimed date first used and date first used in Louisiana of 13 February 2008.

287.   Defendant submitted a solemn statement to the Louisiana Secretary of State, attesting to the truth and accuracy of the statements made in obtaining Louisiana registration of TIRAMISU.

288.   Defendant claims a trademark in TIRAMISU by affixing a "TM" to the flavor name in Defendant's promotional materials and advertising.

289.   Defendant's own promotional literature, including its present internet website, identifies the "Tiramisu" flavor concentrate as having the color "Light Brown", and the description: "Tiramisu™ is an Italian dessert that is world renowned.  It consists of sponge cake dipped in espresso, drizzled with rum, layered with mascarpone cream and topped with cocoa powder.  If you have never tasted the real dessert, you can now taste it in our newest flavor concentrate.  The flavor is really rich and captures all the tastes of the authentic dessert, even the mascarpone cream finish".

290.   "Tiramisu" is a *generic* identifier for the flavor name of the snowball shaved ice confection that results from using Defendant's "Tiramisu" flavoring concentrate as directed.

291.   "Tiramisu" is a *functional* identifier for a flavoring concentrate which, when used as directed, produces a generic and functional "Tiramisu" ready-to-use syrup for pouring over shaved ice to be sold to the customers of Defendant's customers.

292.   "Tiramisu" is merely *descriptive* of a flavoring concentrate for producing a snowball shaved ice confection having the taste, color, and smell of a tiramisu dessert.

293.   Defendant has not sold its generic or descriptive "Tiramisu" flavor concentrate for a sufficient time to acquire distinctiveness or establish secondary meaning.

294.   The question whether or not Defendant exclusively used the mark in commerce as a trademark for a significant amount of time is a material question because such use is required for a descriptive mark to be entitled to trademark protection.

295.   Defendant's false statement about its ownership of the mark TIRAMISU through exclusive use in commerce is a false statement regarding a material fact because acquired distinctiveness or secondary meaning, through exclusive use in commerce for a significant period, is required for a descriptive mark to be entitled to trademark protection.

296.   Defendant's false statements regarding Defendant's right to the mark TIRAMISU, the absence of any others' right to the generic term, and purported exclusive use of the term, are a fraud upon the State of Louisiana, being false statements of material information by Defendant, made willfully, in bad faith, and with the intent to obtain a registration to which the Defendant was not entitled, where the truth of the matter, if disclosed to the State of Louisiana, would have resulted in disallowance of registration.

297.   Defendant's false assertion of a trademark in TIRAMISU is a misstatement of material fact to the customers and potential customers of both Plaintiff Southern Snow and Defendant SnoWizard.

298.   Defendant has disparaged and tarnished Plaintiff's business.

299.   Plaintiffs claim damages, cognizable injury, and ascertainable losses resulting from Defendant's complained-of actions, including but not limited to the costs and lost profits resulting from not being able to offer or sell "Tiramisu" flavor concentrate to customers without exposure to a claim of trademark infringement from Defendant, and the costs and lost profits resulting from customers assuming

39

that Defendant's bogus trademark is valid, and purchasing from Defendant without even enquiring about the purported trademark.

300.   Defendant's actions were perpetrated willfully, and with full knowledge of Defendant's having no legitimate trademark rights in TIRAMISU.

301.   Defendant's actions regarding TIRAMISU constitute a fraud upon the customers and potential customers of Plaintiffs' business.

302.   Defendant's actions regarding TIRAMISU were ongoing and continuing as of 1 March 2010.

303.   Regarding TIRAMISU, Defendant SnoWizard has violated Lanham Act Section 43 (15 USC §1125), and Plaintiffs are entitled to the remedies provided for such violation.

304.   Regarding TIRAMISU, Defendant SnoWizard has violated the Louisiana Unfair Trade Practices Act (LUTPA), La. R.S. 51:1405, *et seq.*, by causing ascertainable losses resulting from Defendant's complained-of actions.

305.   Regarding TIRAMISU, Defendant SnoWizard is liable to Plaintiffs under Louisiana Civil Code Article 2315 for damages caused by Defendant's complained-of actions.

306.   Regarding TIRAMISU, Plaintiff Southern Snow is entitled, under Lanham Act Section 35 (15 USC §1117), to recover damages, enhanced damages, profits, and litigation costs, even in the absence of a finding of fraud or willfulness.

307.   Regarding TIRAMISU, Plaintiff Southern Snow is entitled, under Lanham Act Section 35 (15 USC §1117), to recover reasonable attorney fees for Defendant's fraudulent and/or willful acts which make this case exceptional.

308.   Regarding TIRAMISU, Plaintiff Southern Snow is entitled, under the Louisiana Unfair Trade Practices Act (LUTPA), to recover damages for Defendant's actions, even in the absence of a finding of fraud or willfulness.

309.   Regarding TIRAMISU, Plaintiff Southern Snow is entitled, under the LUTPA, to recover treble damages and to recover reasonable attorney fees for

Defendant's fraudulent and/or willful actions.

310.   Regarding TIRAMISU, Plaintiff Southern Snow is entitled to an order cancelling the Louisiana Trade Mark registration under La. R.S. 51:219.

311.   Regarding TIRAMISU, Plaintiff Southern Snow is entitled, under Louisiana Civil Code Article 2315, to recover damages for Defendant's actions, even in the absence of a finding of fraud or willfulness.

## ZEPHYR

312.   Defendant SnoWizard claims a common-law trademark in the purported mark ZEPHYR, as evidenced by, *inter alia*, Defendant's placing a "TM" adjacent to the flavor concentrate name in its promotional literature.

313.   Defendant's own internet website presently describes its "Zephyr" snowball flavoring concentrate as follows:  "Coming Soon".

314.   Defendant does not presently sell, and has never sold, a "Zephyr" flavoring concentrate.

315.   Defendant cannot have trademark rights in goods that it does not, in fact, sell or use in commerce.

316.   Defendant's claim of a common-law trademark in ZEPHYR is therefore unsupported and unsupportable, and is made in bad faith.

317.   Defendant's false assertion of a trademark in ZEPHYR is a misstatement of material fact to the customers and potential customers of both Plaintiff Southern Snow and Defendant SnoWizard.

318.   Defendant has disparaged and tarnished Plaintiff's business.

319.   Plaintiffs claim damages, cognizable injury, and ascertainable losses resulting from Defendant's complained-of actions, including but not limited to the costs and lost profits resulting from not being able to offer or sell "Zephyr" flavor concentrate to customers without exposure to a claim of trademark infringement from Defendant, and the costs and lost profits resulting from customers assuming that Defendant's bogus trademark is valid, and purchasing from Defendant without

41

even enquiring about the purported trademark.

320.   Defendant's actions were perpetrated willfully, and with full knowledge of Defendant's having no legitimate trademark rights in ZEPHYR.

321.   Defendant's actions regarding ZEPHYR constitute a fraud upon the customers and potential customers of Plaintiffs' business.

322.   Defendant's actions regarding ZEPHYR were ongoing and continuing as of 1 March 2010.

323.   Regarding ZEPHYR, Defendant SnoWizard has violated Lanham Act Section 43 (15 USC §1125), and Plaintiffs are entitled to the remedies provided for such violation.

324.   Regarding ZEPHYR, Defendant SnoWizard has violated the Louisiana Unfair Trade Practices Act (LUTPA), La. R.S. 51:1405, *et seq.*, by causing ascertainable losses resulting from Defendant's complained-of actions.

325.   Regarding ZEPHYR, Defendant SnoWizard is liable to Plaintiffs under Louisiana Civil Code Article 2315 for damages caused by Defendant's complained-of actions.

326.   Regarding ZEPHYR, Plaintiff Southern Snow is entitled, under Lanham Act Section 35 (15 USC §1117), to recover damages, enhanced damages, profits, and litigation costs, even in the absence of a finding of fraud or willfulness.

327.   Regarding ZEPHYR, Plaintiff Southern Snow is entitled, under Lanham Act Section 35 (15 USC §1117), to recover reasonable attorney fees for Defendant's fraudulent and/or willful acts which make this case exceptional.

328.   Regarding ZEPHYR, Plaintiff Southern Snow is entitled, under the Louisiana Unfair Trade Practices Act (LUTPA), to recover damages for Defendant's actions, even in the absence of a finding of fraud or willfulness.

329.   Regarding ZEPHYR, Plaintiff Southern Snow is entitled, under the LUTPA, to recover treble damages and to recover reasonable attorney fees for Defendant's fraudulent and/or willful actions.

330.   Regarding ZEPHYR, Plaintiff Southern Snow is entitled, under Louisiana Civil Code Article 2315, to recover damages for Defendant's actions, even in the absence of a finding of fraud or willfulness.

### Damages caused by all bogus trademarks combined

331.   Plaintiff has been damaged by each trademark obtained by fraud or otherwise falsely asserted or used as unfair competition or trade practice, and has also been damaged by the totality of Defendant's amassing a false portfolio of false trademarks, which together make a false claim to customers and potential customers that Defendant's products are legitimate and Plaintiff's products are not, which cause confusion among customers and potential customers regarding whether purchasing supplies from Plaintiff is somehow unlawful, and which require Plaintiffs' principal officers' to respond to Defendant's constant bogus claims of trademark.

WHEREFORE Plaintiffs Southern Snow Mfg. Co., Inc., and Simeon, Inc., pray that, after due proceedings had, the Court render judgment against Defendant SnoWizard, Inc., for damages, enhanced damages, treble damages, profits, costs, and reasonable attorney fees, for orders cancelling fraudulently-obtained federal and Louisiana trademarks, where applicable, and for injunctive and/or other equitable relief, under the federal Lanham Act, the Louisiana Unfair Trade Practices Act, and Louisiana Civil Code Article 2315, and any other equitable or legal remedies authorized by law.

RESPECTFULLY SUBMITTED:
Attorney for Plaintiffs

Mark Edw. Andrews
Louisiana Bar No. 26172
Andrews Arts & Sciences Law, LLC
7104 Coliseum St.
New Orleans, LA  70118
504-383-3632
mea@mealaw.com